OPINION
The defendant-appellant, Charles F. Ganson ("the appellant"), appeals the judgment of the Allen County Court of Common Pleas finding him guilty of one count of rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree. For the following reasons, we affirm the appellant's conviction.
The facts and procedural history are as follows. On the afternoon of May 21, 1999, the appellant visited the home of his son, Charles Jr., and daughter-in-law, Madonna. Charles Jr. and Madonna are the parents of three children, Kaylie, age one, Cody, age eight, and Christopher, age three. The appellant had planned to spend the evening at his son and daughter-in-law's home so that he could go fishing with his daughter early the next morning.
Later that evening, Charles Jr. left the residence to go to work. According to Madonna, when her husband worked night shifts she and the children slept in the master bedroom. On or about 12:30 a.m., while watching television in the master bedroom, Madonna heard a knock on the bedroom door. At the time, Cody and Kaylie were sleeping in the master bed, and Christopher was sleeping in a chair adjacent to the bed.
According to Madonna's testimony, the appellant opened the bedroom door and began to speak with her. The appellant was dressed only in a bathrobe. Madonna testified that, on more than one occasion, the appellant's bathrobe fell open and she observed him naked. The appellant then left the bedroom and Madonna closed the door. A few minutes later the appellant returned to the bedroom, but left shortly thereafter. Madonna then went to sleep.
Sometime later that morning, Madonna awoke and found the appellant standing over her, attempting to insert his penis into her mouth. Madonna testified that she closed her eyes hoping the appellant would believe she was asleep. According to Madonna, the appellant then told her not to fight him. The appellant knelt down beside the bed and tried to put his tongue into Madonna's mouth. The appellant then allegedly began to fondle Madonna's breasts.
Madonna testified that she began to kick her son in order to wake him up, but stopped because she was afraid the appellant might harm the children. The appellant then fondled the appellant's breasts and vaginal area. According to Madonna, the appellant climbed on top of her and told her not to fight him. The appellant then had sexual intercourse with Madonna. According to Madonna, after the appellant finished he told her that he would be back, and they would "do it again." The appellant then left the bedroom. Thereafter, Madonna closed and locked the bedroom door and called her husband, who eventually called the police.
In an indictment dated June 17, 1999, the appellant was charged with one count of rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree. On June 24, 1999, the appellant entered a plea of not guilty to the offense of rape. On June 29, 1999, the appellant entered a written plea of not guilty by reason of insanity. A bench trial was held on May 2, 11, and 16, 2000, in the Allen County Court of Common Pleas. By judgment entry of May 16, 2000, the trial court found the appellant guilty of one count of rape. The appellant was sentenced to a term of imprisonment of seven years.
The appellant now appeals, asserting three assignments of error for our review.
 Assignment of Error No. I The trial court's verdict that defendant was guilty of rape is against the manifest weight of the evidence.
 Assignment of Error No. II Appellee's evidence was legally insufficient to support the verdict of the trial court.
 In his first and second assignments of error, the appellant maintains the verdict was against the manifest weight and sufficiency of the evidence. For the following reasons, we do not agree.
Regarding the legal standards of sufficiency of the evidence and manifest weight of the evidence, the Supreme Court of Ohio has stated that they are both "quantitatively and qualitatively different." Statev. Thompkins (1997), 78 Ohio St.3d 380, 386. Whereas sufficiency is a test of adequacy, weight of the evidence refers to "inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Id. at 387, quoting Black's Law Dictionary (6 Ed. 1990) at 1594.
Because sufficiency and manifest weight of the evidence are two distinct legal standards, we will address each argument separately.
 I. Sufficiency of the Evidence
Sufficiency of the evidence is the legal standard applied to determine whether the evidence is legally sufficient to support the trier of fact.State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy and whether the evidence is legally sufficient to sustain a verdict is a question of law. Thompkins,78 Ohio St.3d at 386. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith,80 Ohio St.3d at 113.
In the case herein, the appellant was convicted of rape, in violation of R.C. 2907.02(A)(2). R.C. 2907.02(A)(2) states, as follows:
 No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
The record herein demonstrates the following pertinent evidence. At the appellant's trial, Madonna testified that she awoke to find the appellant attempting to put his penis into her mouth. Madonna testified that the appellant kissed her on the lips, fondled and kissed her breasts, and inserted his fingers into her vagina. According to Madonna, the appellant then pulled off her shorts and had sexual intercourse with her.
Madonna testified that shortly before the appellant had sexual intercourse with her, she put her hands on his chest and attempted to push him off, but she was unsuccessful. The appellant also told her not to fight him and that he "hadn't had it in two months" and that Janie, his ex-wife, "was giving it to everybody else but not him." Madonna testified that on more than one occasion the appellant told her "not to fight him" and that she was afraid to awaken the children because he might harm them.
David Tomlinson, a former police officer with the Spencerville Police Department, testified that he was the first officer to report to the scene of the alleged rape. Officer Tomlinson proceeded to the Ganson home after he had received a dispatch report of an alleged rape. Officer Tomlinson testified that Madonna was extremely upset and that she had told him the appellant had raped her. Allen County Sheriff's Deputy Robert Najmulski also testified that Madonna appeared upset and frightened.
After a thorough review of the record herein, we are satisfied that there was substantial evidence from which the trier of fact could conclude that every element of the offense of rape had been proven beyond a reasonable doubt. Therefore, we find there is sufficient evidence to support the trier of fact's verdict in this case. Accordingly, the appellant's initial argument is without merit.
 II. Manifest Weight of the Evidence
In determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387. Weight of the evidence concerns the "inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Id. Appellate courts reverse on the ground of manifest weight only in exceptional cases "where the evidence weighs heavily against the conviction." State v. Mendoza (March 31, 2000), Hancock App. No. 5-99-46, unreported, citing Thompkins,78 Ohio St.3d at 389.
A complete review of the record of this matter, as recited above, does not lead this Court to conclude that the trier of fact clearly lost its way and created a manifest miscarriage of justice. We find the weight of the evidence clearly supports the verdict rendered by the finder of fact. Therefore, the appellant's second argument is without merit.
Accordingly, the appellant's first and second assignments of error are overruled.
 Assignment of Error No. III The trial court's judgment that defendant failed to persuade the court by a preponderance of the evidence that defendant was insane was against the manifest weight of the evidence.
 In his third and final assignment of error, the appellant argues the trial court's conclusion that he had not met the legal definition of insanity at the time of the rape was against the manifest weight of the evidence. For the following reasons, we do not agree.
The plea of not guilty by reason of insanity is an affirmative defense which must be proved by a preponderance of the evidence. State v. Brown
(1983), 5 Ohio St.3d 133, 134. A person is not guilty by reason of insanity only if he proves "that at the time of the commission of the offense, [he] did not know, as a result of a severe mental disease or defect, the wrongfulness of [his] acts." R.C. 2901.01(A)(14). "The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of fact." State v. Thomas
(1982), 70 Ohio St.2d 79, 80. "A trial court's judgment as to insanity will only be reversed where overwhelming and uncontradicted evidence leads to a contrary conclusion." State v. Owens (May 10, 1999), Madison App. No. CA98-05-022, unreported, at 10-11, citing State v. Brown
(1983), 5 Ohio St.3d 133.
In the present case, the record shows the appellant has had a long history of psychological problems. The appellant experienced mental breakdowns in 1964, 1966, and 1968. According to the appellant, he has suffered from hallucinations since 1964. In 1977, the appellant was admitted to Springfield Mercy Hospital after having suffered from symptoms of hallucinations. The appellant was prescribed the drug Loxitane. In 1992, the appellant was prescribed Lithium, which stopped the hallucinations. According to the record, the appellant has been seeing a mental health professional on a regular basis since 1992.[1]
Shortly before the incident on May 22, 1999, the appellant admitted himself into the Mary Rutan Hospital, located in Bellefontaine, Ohio, after having suffered from hallucinations. According to the appellant, he stopped taking his Lithium medication shortly before admitting himself into the hospital. The appellant later walked out of the hospital because he was scared and believed the hospital staff was trying to kill him.
In July 1999, the trial court ordered the appellant to undergo a psychological evaluation. Dr. Daniel D. Hrinko, a Clinical Psychologist with the Forensic Psychiatry Center of Western Ohio, evaluated the appellant. Dr. Hrinko concluded in a written report that in his expert clinical opinion the appellant did suffer from a mental illness and that he was legally insane at the time of the offense. However, in a written report dated October 28, 2000, Dr. Frederick P. Ferri, a Counseling and Forensic Psychologist with Applied Psychological Services, concluded the appellant was not insane at the time of the offense.
According to Dr. Ferri, the appellant does suffer from a serious mental disorder, specifically Affective Bipolar Disorder. However, Dr. Ferri opined there was no causal link between the manic psychosis suffered by the appellant at the time of the offense and the specific act of rape for which he was charged. In Dr. Ferri's opinion, the appellant's mental state at the time of the offense was such that he was able to appreciate the wrongfulness of his actions and that he was criminally responsible for the acts he committed on the morning of May 22, 1999. In a written report dated February 8, 2000, Dr. Matthew P. Ziccardi, a psychologist with Clinical Neuropsychological Services, also concluded that the appellant did suffer from a psychiatric disorder but nonetheless was criminally responsible for his actions.
Furthermore, the record reveals that prior to the offense on May 22, 1999, the appellant allegedly told Madonna and her parents that "he could commit the perfect crime and get away with it by pleading insane". Madonna's testimony that the appellant had told her "not to fight him" further demonstrates the appellant was able to appreciate the wrongfulness of his actions.
In light of all the foregoing, we find that the trial court's conclusion that the appellant had not met his burden of proof on the not guilty by reason of insanity plea was not against the manifest weight of the evidence. Therefore, we find no merit to the appellant's argument. Accordingly, the appellant's third and final assignment of error is overruled.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the Allen County Court of Common Pleas.
 Judgment affirmed.
WALTERS and BRYANT, JJ., concur.
[1] The record reveals the appellant had been visiting a mental professional every three months since 1992.